2415.14 Tavakkol v. MSPB Mr. Zakai. Good morning and may it please the Court. My name is Howard Zakai on behalf of the petitioner, Sayu Tavakkol. We ask this Court to vacate the Board's decision and remand for a jurisdictional hearing. I'm a little confused about one thing, maybe you can help me with it. As I understand this involuntary resignation theory, the petitioner has to establish that it wasn't an option available to him to stand and fight to make the argument. Here, your client did raise issues before the MSPB before he resigned in March 2015. But as I understand the jurisdiction of the EEOC, it does not extend the Whistleblower Protection Act claims, correct? What Mr. Tavakkol presented No, no, is that correct? The Whistleblower Protection Act does not necessarily pertain to Postal Service employees. However, retaliation because of whistleblowing or EEO, okay, was presented Okay, but you're not answering my question. My understanding is the EEOC doesn't have jurisdiction over those whistleblower claims, right? Over the whistleblower claims, correct. Okay, so the claims that we have before us now, because of a waiver of the discrimination argument, are the whistleblower-related claims. So my question is, since they weren't presented to the Merit System Protection Board before the resignation, what's the evidence that he couldn't have done that and raised that issue instead of resigning? So the essence of an involuntary resignation claim are acts, improper conduct, which can be retaliation for EEOC. Sure, but part of your showing has to be that your client involuntarily resigned instead of standing and fighting, that standing and fighting wasn't an available option to him as a practical matter. And what I'm saying is your client filed several months before he resigned with the EEOC, raising these arguments about discrimination, but he never filed a whistleblower claim or an adverse action claim with the MSPB. What's the excuse for not doing that? Well, he had gone to the Office of General Counsel. He had told the EEOC office, he had told his managers that he was being disciplined for whistleblower retaliation. Okay, but he had a remedy, which he didn't pursue, right? At that time, he thought that the way to go... No, no, no, you're just answering my question. He did not file with the MSPB at that point. And that was an available remedy to him, right? That could have been an available remedy. So under the stand and fight theory, why isn't he barred from making this involuntary resignation argument because he failed to pursue an available remedy without an excuse? I think, well, he might have believed that it was to first go to the EEOC. Afterwards, he then went to the MSPB. Is it, am I correct in understanding that it was from the time of leaving the employment until the time of raising the whistleblower claims for the board was like four or five years? He had continued before the EEOC to raise whistleblowing and whistleblowing retaliation as part of... Was it four or five years before he went to the MSPB? That's right. The MSPB was deemed an appeal of the EEOC administrative judge's decision. And that's where he continued to raise all these claims of involuntariness in addition to the retaliation... He didn't have to wait for the EEOC decision. He had an independent claim that he could have brought before the MSPB relating to whistleblowing, correct? He could have. The essence here is that he was physically disabled. He was losing his job. They were telling him he no longer had a position. He was able to file before the EEOC in 2015. Why couldn't he file before the MSPB? He had... Why didn't he? He had filed the EEO in that fall. He was still working at the time. And that remained pending. By the time he was forced to resign, he's already being told that he has no position that he could perform with or without accommodation. He's physically... Okay, that's your answer to my question. If he could file in March of 2015 before the EEOC raising the discrimination claims, why is it that he couldn't file before the MSPB raising the whistleblower claims? I don't... To answer your question, Your Honor, I don't know why. But the law is not that he has to exhaust every single tribunal, especially if the coercion and the lack of communication, and in fact, the deceiving communication about his options as an employee is leaving him no options as to what he can do about the fact that he's getting sicker and sicker every time they keep on disciplining him for his prior activity, whistleblowing and EEO activity. And he's getting sick. And at this point, he's being told, you can't even come back. But the theory of involuntary resignation is that it wasn't an option available to the employee to stand and fight, to raise the issues that led to the resignation in an appropriate forum. And here, it seems to me, the record doesn't support the notion that he couldn't stand and fight. If he could have filed before the EEOC for the discrimination claims, surely he could have filed before the MSPB with the whistleblower claims. He could have, Your Honor. The law also recognizes, and mind you, this is several months later, so conditions have deteriorated. It gets to a point where if exhaustion is going to be futile, he's being told he's losing his job. He has no more positions to come back to. He's now no longer getting paid. He's physically incapacitated. They're telling him, you can't perform even if we don't grant you an accommodation. He has already exhausted other outlets, workers' compensation. He has an EEO pending. And now he's being told, you can't come back. And he's not well at all. So at this point, when you put all that together, when he's asking for clarification, what can I do? You're telling me that I can't come back even if you don't give me an accommodation, which he wasn't asking for. But that's besides the point. But they told him that he could not have an accommodation, right? I'm sorry, Your Honor. I had understood him to be saying he couldn't come back because he couldn't have an accommodation. They're saying that's not the case. He never asked for an accommodation. The agency construed it as an accommodation. We're not disputing that part. All they had to do was decide there's no accommodation to give you and leave it at that. What they did is go well beyond the scope of the matter and say, you can't perform even without an accommodation. And he's stuck, sick, not well. He's on leave. And he writes an appeal and asks for clarification. You're telling me I can't perform with or without. What am I supposed to do? They don't respond. They mail that documentation with respect to his sick leave continuation. They mismail it, even though they have his address. Then they put him on absent without leave, without pay, penalizing him because he never responded to something they never sent him. And so now he's not being paid. He is gravely ill. I mean, not deathly, but he's not well. And he thinks they're ignoring him. And he also thinks that he has no position that he could return to. So that's not the issue. The issue is whether he could have filed a claim, whether he could have stood and fought. He had already stood and fought on several different fronts. And it wasn't just about was the wrong per se. It was that he was being harassed and disciplined. And all elements, whether it's whistleblower retaliation, EEO retaliation, all those facts come into play as to why and how someone is getting sick. And he was physically unable to, at that point in time, at the time that he was forced to resign, which is in July, after months of medical leave, after months of not getting answers. And the only answers he's getting is actually deceptive or misleading information upon which he's reasonably relying. So at that point in time, he already has an EEO pending. He tried with workers' compensation. He tried. He went to OSHA. And he tried. And nothing is getting done. No one is investigating anything. And he's now sick and worse off than he was when he originally filed the EEO back in the fall. So at that point, when you look at all the circumstances, he had stood and fought to the extent that he could. He did go to many different places. Things got worse. They stopped answering his requests. And so at that point, he was left with no choice. He actually thinks he has no position left. And at that point, he resigns. He even went to seek unemployment insurance. And the state tribunal determined, in fact, yes, you got sick because of the conditions and the supervisors causing you to get sick. And you don't have a position to which you can return. And that's where we were left, your honors. Unless your honors have additional questions, I'll reserve the remainder of my time for rebuttal. OK. Thank you. Mr. Blanton. Good morning, your honors. May it please the court. I'd like to first address the scope of this appeal. You heard the petitioner argue that this case is not just about whistleblower reprisal incidents. And respondent disagrees. The scope of the appeal before this court is exceedingly narrow. In order to proceed before the court, Mr. Tavakol waived his discrimination claims, which sort of formed the bulk of his case before the MSPB. His theory is that there were intolerable working conditions before the MSPB, based both on EEO discrimination issues and whistleblower reprisal that were so intolerable that it caused him to become ill, unable to work, and ultimately to resign. But given the waiver of the discrimination claims in order to proceed before this case, what we are left with is three incidents of whistleblower reprisal. And these include a letter of warning, a placement on a performance improvement plan, and a letter of concern. What is your view on the delay in time between the fact that while Mr. Tavakol was employed, he filed an EEOC case, and he could have gone to the MSPB, but he did not go to the MSPB. What weight, as a matter of law, does that make it so he could not have jurisdiction before the MSPB now? In other words, how does that weigh against the voluntariness of his support that his resignation was voluntary? I think, Your Honor, it's two separate issues. In terms of jurisdictional, like the timeliness of his board of appeal, is that what you're asking about? No, I think what she's asking is the stand and fight theory. Did he need to apply for relief to the MSPB? No, Your Honor. He did not have to seek an appeal before the MSPB at that time. But the question is, were there options available to him? No, the question is whether his failure to seek relief from the MSPB at the time means that he can't assert an involuntary resignation claim. Because he needed to stand and fight and raise his issues at the MSPB at the time. I don't think that stand and fight necessarily means he had to file an MSPB appeal. I think stand and fight means you must not resign your position. We want employees to stay on the job and appeal, which Mr. Tavakol did in this instance. He filed an EEO. Yeah, but he didn't file. We're now confined to whistleblower protection. He didn't file a whistleblower protection. That's correct. But the test isn't whether or not he filed it. The test is whether there were options available to him that he... It's a coercion test. Options available to him that he didn't presume that he could have pursued. That's correct. He had an option here to pursue, which is to raise a whistleblower protection claim, which he didn't pursue. Yes, that is an option that he could have pursued. And, Your Honor, we agree with you that this was not an instance of a lack of meaningful choice. There were many options that he could have pursued. How does that relate to whether or not he's filed non-frivolous allegations? The test, Your Honor, is whether or not he raised non-frivolous allegations that his working conditions were so intolerable that a reasonable person would have felt compelled to resign. Correct. That's how I understand it also. But I don't understand how the failure to follow, for example, another filing option, why that minimizes the adverse conduct that he did allege. Well, Your Honor, there's multiple theories of a coercion... I mean, he doesn't have to prove his case, right, at the beginning of his filing. He had to raise non-frivolous... Correct, Your Honor. Non-frivolous allegations that his working conditions were so intolerable. And then he proves his case later on as to the other aspects of the non-whistle blower protection statute. I'm sorry, Your Honor? Then he has to prove later on. I mean, he needs to... The question is whether he was denied a jurisdictional hearing on the basis that he did not file non-frivolous allegations. Correct, Your Honor. Right. And MSP's position is that these three incidences of whistleblower reprisal do not amount to non-frivolous allegations that a reasonable person would have felt compelled to resign facing a letter of warning, a letter of concern, and a performance improvement plan. Correct. There are reasons you can challenge a PIP. And what the MSPB does or happens here is that you look at the totality of the circumstances. Yes, Your Honor. And here, it seems to me that they did not look at the totality of the circumstances. They looked at some of the circumstances and discounted others. I think what the MSPB did, Your Honor, is they looked at the totality of the circumstances, recognizing that generally the circumstances preceding a resignation are most probative. But nonetheless, they did still consider the totality. I mean, they are part of the totality of the circumstances that are considered. Yes, Your Honor. And I believe the MSPB did consider, I think it's page 12 of the initial decision, the judge recognizes, considering all the circumstances of when he resigned, that these simply, even accepting his allegations as true, these simply did not rise to the level of a non-frivolous allegation. But you would say that there was such a, you know, look at the amount of time where between, you know, the workplace conduct and then it was like four or five months later. They did emphasize that change in time, the amount of time, and rely on that. And maybe inconsistent with our decision in Trinkle, right? Correct, Your Honor. We addressed this in our brief. But yes, you know, to the extent the administrative judge acknowledged that the most probative evidence was, you know, right before, and you consider that weighing of evidence, to the extent that's an error, ultimately, regardless of the, it's harmless. How do we know it's harmless? Because regardless of the timing, we are only, we aren't considering all of the incidences before the MSPB. We're considering three whistleblower claims, which regardless of the timing, simply don't rise to the level of a non-frivolous allegation. You know, we're looking at a letter of concern, a letter of warning that, Your Honor, was expunged prior to Mr. Tavakol, long before he resigned, and his placement on a performance improvement plan. And as Your Honor recognizes- We're in the best federal circuit case supporting the position that when we look at the totality of circumstances, we should ignore any allegations of discrimination because the EEOC claims no longer exist. I mean, in the sense of looking at the totality of circumstances in the workplace environment. Well, Your Honor, we have to. Mr. Tavakol- I asked for a case. I just- Oh. What is your best case for saying that we should not be looking at any of the discrimination claims? Perry, Your Honor. The Supreme Court decision in Perry says that this would be a mixed case, to the extent you're considering, you're alleging an appealable action. Mr. Tavakol alleged an appealable action. But the question is, you're saying that you can't even have consideration of the facts, and it's part of your totality of circumstances case, not to raise a discrimination claim, but to raise a claim involving whether there was such a hostile workplace that he had no choice but to resign. They're different issues, different claims. Correct, Your Honor. I would say the Harris case dictated that if you waive discrimination claims, what you can pursue is a theory that these actions were taking based on they were wrongful or they were harassing, anything except for a theory of discrimination. And the test dictated by Perry is whether the appellant alleges that they were subjected to an appealable action, and that action was based on discrimination or EEO reprisal. And so that's the essence of Mr. Tavakol's claim here, and if you look at his 15C before this court, that's what he had to waive in order for this court to have jurisdiction over the case. He cannot pursue theories of discrimination. So what you're saying is he waived his primary evidence. Correct, Your Honor. It's not just the theory, but also the evidence. Correct. If you look at Petitioner's brief, he has all these facts. He articulates a lot of facts that are really relevant to waived claims. These discriminatory comments, these threats, something about a knife and a gun, and all of that, none of that, all of that is waived for two reasons. The first being he chose to do so in his opposition to our motion to transfer in order to remain in this court. And the second is that if you look at Petitioner's brief at page 39, in his legal argument section, what he relies on are these three alleged incidences of whistleblower reprisal, presumably because he recognizes that's all that the case boils down to if you discount all of the discrimination claims. And so what this court is left with is an exceedingly narrow version of the case that was before the MSPB. You use the term discrimination claim. Let me ask you this question. Is it not the case that facts that can be used to underlie or support an EEOC claim are also probative of perhaps in the whistleblower action? They could be, Your Honor. And in this case, I believe Mr. Tavagal alleged that these three, the PIP and the letter of concern, were both EEO and whistleblower. The fact that somebody alleges a hostile environment based on discriminatory conduct or racist conduct, let's say, within the workplace, those facts are not discounted just because they can be used to support an EEOC claim. They can also be used with respect to a whistleblower claim. They could, Your Honor. But the question, this court has to satisfy itself of its jurisdiction. And to the extent Mr. Tavagal would be relying on theories of discrimination, that he was coerced to resign because the agency's actions were discriminatory, those claims are waived. They are not before this court. To the extent the court believes those claims are before it, then the case needs to be transferred to district court. Because then it would be a mixed case that relies on a theory of coerced involuntary resignation due to discrimination. So he is free, which he's walking a fine line, and he's free to raise any claims that he can characterize as not based on discrimination. And that's why we get this emphasis on page 39 of Petitioner's brief of the three whistleblower claims. It sounds like you're making conclusions as to the probative weight of the facts of the case, whereas all he has to show is a non-frivolous allegation. That's correct. And that's a low standard, isn't it? It's a low standard, but a non-frivolous allegation is one, if proven, he would prevail. And ultimately, the doctrine of coerced involuntariness is an exceedingly narrow doctrine, and it is a very high burden. Mr. Tavagal had options to stand and fight. But we're not dealing with the ultimate burden here. We're dealing just with whether sufficient allegations have been made. What you're saying is the allegations have to be limited to the whistleblower allegations. That's correct, Your Honor. That is the Respondent's position. And assuming the MSPB's decision, considering the totality of the evidence as before the MSPB, Respondent's position is that the MSPB properly found those allegations were not, well, I guess those aren't properly before this Court. So taking aside all of the discrimination claims, we're left with the three whistleblower claims. And it simply cannot be the case that someone facing that this is a non-frivolous allegation, that he had no other option and he felt compelled to resign based on these three, a letter of warning that was expunged, a letter of concern, and a letter of warning, a letter of concern are not that substantial, severe of an action. A performance improvement plan didn't lead to any performance-based removal, but to the extent it had, Mr. Tavakol would have had appeal rights to the MSPB. The agency would have had to have shown that as part of its case that it was justified in placing Mr. Tavakol on a PIP. And so it simply cannot be the case that these are non-frivolous allegations that a reasonable person would have felt compelled to resign. And then I also want to address his contention that he had no option to resign because he believed the agency was terminating his employment. Even if that were true, as Your Honor recognized, Mr. Tavakol had options. And the precedent dictates that even if the agency had proposed his removal, even that would not have rendered his resignation involuntary. And here, we don't even have a proposed removal. We have his belief that he was being removed based on this sentence in the reasonable accommodation letter, which, as the MSPB found, there was no one at the agency told Mr. Tavakol that he had no job. And if you look at the timeline of events, you have this letter finding he couldn't work with or without an accommodation. But then that occurred in March. And then you have in May the agency sending Mr. Tavakol correspondence saying, we need you to either return to work or submit medical documentation justifying your continued leave. And then Mr. Tavakol resigns in July. And so if you look at the timeline, it's simply not the case that the agency was saying he had no job. In fact, it was actually telling him, you need to return to work or submit additional medical evidence. Let me read something to you out of the initial decision of the MSPB. It says, when an appellant raises, this is appendix 9 in the middle of the page, when an appellant raises allegations of discrimination or reprisal in connection with an involuntariness claim, evidence of discrimination may be considered only in terms of the standard for voluntariness in a particular situation, not whether the evidence meets the proof of discrimination or reprisal. Thus, evidence of discrimination and reprisal goes to the ultimate question of coercion, where under all circumstances, working conditions were made so difficult by the agency. Do you agree with that last part of this statement? Correct, Your Honor. That is the test. But the difference is the MSPB has jurisdiction over mixed cases, and they can hear discrimination claims, whereas this court does not. And so once, you know, if Mr. Tavakol wanted to pursue the theories that were based on discrimination, he was free to file in district court and have a plethora of claims considered in the totality. But Mr. Tavakol, represented by counsel, elected to waive the claims, and now we are left with a small subset of the case that was before the MSPB with the three whistleblower claims that I have outlined. And Respondent's position is that those three claims were considered by the MSPB. The case is much narrower. And those three incidences simply are not non-frivolous allegations that his working conditions were so intolerable that a reasonable person, the test is objective, a reasonable person would have felt compelled to resign facing a letter of warning, a PIP, and a letter of concern. Again, the letter of warning had been expunged long before he resigned. The performance improvement plan, I don't believe was in the record, but didn't appear to lead to any adverse employment consequences. And so Respondent's position is that given the narrow view of this case, the MSPB's decision finding that the allegations concerning the three whistleblower claims were simply not non-frivolous allegations. Okay. I think we're out of time. Thank you. Okay. Thank you. Ms. Jezikai. Your Honor, just a few brief points. The only thing that was waived were the racist comments early in the scheme of events. Well, he waived any discrimination claims. And we have waived all discrimination. I mean, there was evidence of discrimination here, but he's waived those claims. That's correct. And in the panoply of events that go towards the question of coercion, that was just a small fraction. We are indeed relying heavily on threats of intimidation, including Mr. Hamill's remarks, and in addition, a repeated exercise of disciplinary actions taken against him in retaliation. Can I understand correctly that what it is that you waived was a claim that there was constructive termination, involuntary resignation as a result of discrimination by the USPS on the basis of race, religion, national origin, or disability? That's correct. Okay. Yes. That makes it pretty hard, then, to rely on that evidence for the basis of why he voluntarily or involuntarily resigned. Because we don't need... Well, Your Honor, respectfully, we're not relying on that piece of information because the rest of the information, the rest of the facts are pretty significant. The repeated disciplinary actions taken from August, September, going into that winter were pretty significant. Those are the ones that made him very ill. That's when he had this panic attack after the letter of warning. Now, there was an EEO settlement in October 2014 in which they were supposed to, in its words, abide by their obligations, agency's obligations, not to violate whistleblowing activity and not to retaliate. What did they do? And it was re-expunged. What happened next? They kept on disciplining him for whistleblowing activity over and over and over again. So in terms of standing and fighting, he had raised these claims at the mediation in October. He gets to a settlement. They withdraw the letter of warning. And it's as if it's all being disregarded by the very same supervisors. They keep on going back to the same thing over and over and over again. So he did stand and fight with respect to whistleblowing, doing anything more by the time he's very sick in the spring of 2015. He's very ill. He exhausted those remedies and he's stuck. Your Honor, Judge Skoll, your question was about considering the five months. It's our argument that actually the error was by the board is that they viewed that whatever happened in that winter of 2014 was attenuated by those five months. The problem with the board's decision is that it completely miscomprehends miscomprehends that those five months were medically caused. He got ill because of the harassment and coercive acts that were taking place in that fall. So you can't say that it's attenuated. It's part and parcel of the coercion. It's the essence of his claim. So it's not attenuation. He got sick. And in all the cases that are recognizing a prima facie case, non-frivolous allegations of coercion, all of them have one thing in common, as does this case. They all have allegations where the person gets sick and it's substantiated by physician's medical documentation that was submitted here. And we asked for him to, for the case to be remanded so he could prove the coercion. But certainly at the point of non-frivolous allegations, that is absolutely met here with the documentation. Okay, I think we're out of time. Thank you. Thank you, Your Honor. Thank you, counsel.